## 17333

H. L. JEFFERS, Respondent, v. C. E. HARDEMAN, Appellant.
OZELA MATTHEWS, by her Guardian *ad litem,* Ozela Matthews,
Respondent, v. C. E. HARDEMAN, Appellant

(99 S. E. (2d) 402)

*Messrs. Hubert E. Long,* of Batesburg, and *Nelson, Mul-lins & Grier,* of Columbia, *for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, and *R. Milo Smith,* of Lexington, *for Respondent,*

580

July 25, 1957.

Oxner, Justice.

These two actions stem from an automobile accident which occurred about 4:00 p. m. on March 22, 1955 on Highway No. 321 near Gaston, South Carolina, when a Ford truck owned and operated by H. L. Jeffers collided with the rear of a Pontiac automobile owned and operated by C. E. Hardeman which had been stopped on the highway in Jeffers' lane of traffic. Jeffers brought an action against Hardeman to recover for personal injuries received and damage to his automobile as a result of the collision. Ozela Matthews, a minor who was a passenger in Jeffers' truck, brought an action against Hardeman to recover damages for personal injuries sustained by her.

By agreement of counsel, the two cases were tried together. Timely motions by defendant for a directed verdict were refused. The jury returned a verdict in favor of Jeffers for $750.00 actual damages and $750.00 punitive damages and a verdict in favor of Ozela Matthews for $100.00 actual damages and $2,000.00 punitive damages. Defendant's motion in each case for judgment notwithstanding the verdict was refused but in the *Ozela Matthews case,* the Court granted a new trial unless she remitted on the record $1,250.00 of the verdict for punitive damages.

Defendant has appealed in both cases. He contends (1) that the Court erred in refusing his motion for a directed verdict as to punitive damages made upon the ground that there was no evidence of willfullness or recklessness to support such damages, and (2) in refusing a motion for directed verdict in the *Jeffers case* on the ground that he was guilty of contributory recklessness as a matter of law. Ozela Matthews has also appealed upon the ground that the trial Judge erred in holding that the verdict awarded her for punitive damages was excessive and in granting a new trial unless she remitted a portion of same.

We shall first determine whether there was any evidence reasonably warranting an inference of willfullness or recklessness on the part of Hardeman. It is conceded that there is some evidence that he was negligent but it is vigorously contended that there is no basis for the award of punitive damages.

Both Hardeman and Jeffers were driving in a northerly direction on a windy afternoon. There were some freshly plowed fields along the highway. Automobile drivers were intermittently confronted with sudden gusts of dust which became more frequent and severe just before the accident.

Hardeman testified that he had his dimmers on and the tail lights burning, and was driving about 40 miles an hour following a Buick car; that it gradually slowed down and stopped; and that he stopped "because the Buick stopped in front of me" and in "a second or two" a truck ran into the rear of his car. He said that he had not noticed the truck following him. He admitted stopping his car in the right lane of the paved portion of the highway and that there was ample room to have parked on the shoulder, but claimed that he did not do so because he did not have time. He made no contention that he was unable to drive off on the shoulder because his vision was obscured by the dust. It is conceded that he was thoroughly familiar with this highway.

Most of the foregoing testimony by Hardeman is sharply contradicted by that offered by the plaintiffs. Mrs. Jeffers testified that immediately after the

accident Hardeman stated to her that it was his and not her husband's fault "because I parked in the highway in front of him." According to the plaintiffs' testimony, the lights on the Hardeman car were not burning. Several witnesses for plaintiffs said that there was no Buick car in front of Hardeman's car after the accident and that they saw no Buick elsewhere at the scene. The jury could infer from this testimony that no car stopped in front of Hardeman and that he voluntarily stopped on the highway. These witnesses further testified that immediately after the accident they saw Hardeman standing in the highway by his car. There is other testimony to the effect that he was directing traffic. But whether he was merely standing in the highway or directing traffic, the testimony of plaintiffs reasonably warrants an inference that Hardeman had ample opportunity to have driven onto the shoulder and not blocked the traffic in Jeffers' lane of travel. If the jury so found, this would constitute a violation of Section 46-481 of the 1952 Code which, except under certain conditions not material here, prohibits the stopping, parking or leaving standing of any vehicle "upon a paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of such highway."

Counsel for defendant apparently concede that there ▮ is some evidence showing a violation of the foregoing statute and that such violation, if found to exist, would constitute negligence *per se*. It is argued, however, that the violation of a statute does not compel an inference of recklessness or willfullness justifying an award of punitive damages. It is said that Hardeman was faced with an emergency and that while he may have used poor judgment, there is nothing in the testimony warranting an inference that he intentionally violated the statute or that his conduct was reckless or willful in any other respect.

It is well settled "that negligence may be so gross as ▮▮ to amount to recklessness, and when it does, it ceases to be mere negligence and assumes very much the

nature of willfullness. So much so that it has been more than once held in this state that a charge of reckless misconduct will justify the jury, if the same be proved, in awarding punitive damages." *Hicks v. McCandlish,* 221 S. C. 410, 70 S. E. (2d) 629, 631. In *Fisher v. J. H. Sheridan Co., Inc.,* 182 S. C. 316, 189 S. E. 356, 359, 108 A. L. R. 981, the Court said: "The violation of a statute is sufficient to carry the issue as to punitive damages to the jury under proper instructions by the court and may warrant the inference of reckless, willful, or wanton conduct, but it is not obligatory as a matter of law to demand such a finding in every case where the question arises."

We think the testimony in the instant case warrants an inference of recklessness and that the issue of punitive damages was properly submitted to the jury. The danger of leaving a vehicle standing on the traveled portion of a highway is well known. Several cases have been before this Court involving a collision with the rear end of such vehicle. *Ayers v. Atlantic Greyhound Corp.,* 208 S. C. 267, 37 S. E. (2d) 737; *Howey v. Jordan's Inc.,* 223 S. C. 71, 74 S. E. (2d) 216. The danger was increased here by poor visibility. Added to this is the fact that the jury could infer from the testimony that there were no rear lights on Hardeman's car.

In reaching the foregoing conclusion we did not overlook *Cubbage v. Roos,* 181 S. C. 188, 186 S. E. 794, 799, strongly relied on by counsel for Hardeman. The defendant there, while driving through a sparsely settled residential section of a small unincorporated village, at a speed of 35 miles an hour, in violation of a 20 mile speed limit, struck and fatally injured an eight year old boy who suddenly dashed in front of the automobile. The Court held that, under the facts presented, driving in excess of the speed limit was not in and of itself sufficient to warrant submission to the jury of the issue of willfullness and recklessness. The Court concluded that the driver complied "with the spirit, if not the letter, of the law." The exceptional circumstances in this case were

discussed in *Vernon v. Atlantic Coast Line Railroad*, 221 S. C. 376, 70 S. E. (2d) 862. We do not think the infraction here could be properly classified as a minor one as was done in the *Cubbage case*. Here the violation of the statute by the defendant was reasonably calculated to create a dangerous hazard upon the highway.

We next consider whether Jeffers was guilty of contributory recklessness as a matter of law. He testified that the dust did not materially interfere with his driving until about the time he reached Athens school house, which the testimony shows was approximately a half-mile from the place of the accident. He says that shortly after reaching this point he reduced his speed from 35 to 20 or 25 miles an hour. His description of the driving conditions from Athens school-house to the place of the accident is as follows:

"Q. All right, sir, tell the jury exactly what happened, now, when you got to this dust storm or gush of wind or whatever it was? A. Well, whenever I was going along there below Athens school house, on in the direction of Gaston, it was kind of bad but it wasn't really bad enough that you'd have to pull off the road. But every once in awhile it would come up on you, but you could see. But on, as you got further on down there where this wreck occurred, why, it would come up in flares over your face, and you would be blinded for just maybe a minute or two before you could see anything. It would just gush right up on you; it wouldn't come and you could see it coming, it would just come right up on you. It was a big field out there. I reckon it's a quarter of a mile or maybe a mile longways and through it, it was just a plumb opening through there. And it had been just lately plowed up there and it was raising a pretty good dust there, and it would come up in that highway there and you wouldn't see nothing until it was done up on you. * * * And so just as we was coming near about into this little store place there, there was another pretty good sweep of this wind come up, which I wasn't going along at any rate of speed much. And as we got into the curve, real good into

the curve, why, this wind come up over my face, and I didn't see anything until I had done hit.

"Q. The first thing, you knew, then, after this particular gush of wind, so to speak, came up in your face, you knew you had hit something? A. That's right.

"Q. All right, sir, what did you hit, what did you find out you had hit? A. I hit a car. I hit an automobile."

The defendant says that the undisputed testimony shows that Jeffers saw an approaching cloud of dust three or four hundred feet ahead of him and that after he entered this cloud of dust he continued to drive some distance at a rate of 20 to 25 miles an hour when his vision was completely obscured, and that this constituted recklessness as a matter of law. But we do not think this is the only conclusion warranted by the testimony. The jury could reasonably infer that the gusts of dust were intermittent and of varying degrees of intensity and that which momentarily blinded Jeffers just before the accident came suddenly upon him. We cannot say that he was guilty of recklessness as a matter of law in not stopping. Evidently Hardeman did not think it was necessary to stop for he continued driving and, according to his testimony, stopped only because the Buick ahead of him did so. The testimony also shows that about the time of this accident several other motorists passed through this area without stopping. Jeffers had no reason to anticipate that Hardeman or any one else would stop a vehicle in his lane of traffic when there was ample room to park on the shoulder.

In an exhaustive annotation in 42 A. L. R. (2d), beginning on page 13, a number of cases are reviewed where a motorist, whose vision was obscured by dust, smoke, rain or other atmospheric conditions, collided with the rear end of a parked or standing vehicle. In most of them it was held that the question of the driver's contributory negligence was for the jury. In the instant case to sustain a directed verdict, we would be required to hold that Jeffers was not only negligent but was guilty of recklessness

or willfullness as a matter of law, for contributory negligence would not be a good defense if the jury found recklessness or willfullness on the part of Hardeman.

*Wright v. Southern Railway Co.*, 210 S. C. 432, 43 S. E. (2d) 139, and *Thompson v. Brewer*, 225 S. C. 460, 82 S. E. (2d) 685, cited in defendant's brief, are readily distinguishable. In the *Wright case* it was held that the driver of an automobile was guilty of gross negligence as a matter of law in failing to stop his automobile on a dark, foggy night before entering a railroad crossing and in failing to lower misty windows so as to enable him to see an approaching train. The driver knew this was a dangerous crossing and proceeded around an automobile which had been stopped immediately in front of him. In the *Thompson case* a motorist was held guilty of contributory recklessness as a matter of law in driving his automobile into the rear end of a slowly moving or stopped truck. It was a clear day, the road was straight, and there was little traffic. Although the truck was seen by the driver at a distance of half a mile, he continued at a speed so great that he could not stop in time to avoid the collision.

Also strongly relied upon by defendant is a North Carolina case—*Parkway Bus Co. v. Coble Dairy Products Co.*, 229 N. C. 352, 49 S. E. (2d) 623. We think this case presented a different factual situation as was pointed out in the later case of *Dawson v. Seashore Transportation Co.*, 230 N. C. 36, 51 S. E. (2d) 921, 923. In the last mentioned case, the Court said:

"We are not inclined to hold that where an automobile was being driven at a speed of 20 to 25 miles per hour, in foggy weather without difficulty for lack of vision, and suddenly entered a dense streak of fog and smoke that cut down visibility to 'about three yards', and the automobile collided with the rear end of an unlighted bus, which had been left on the traveled portion of the highway, before the automobile had proceeded under such conditions more than 6 or 8 yards, at a speed of not more than 15 or 20 miles per

hour, that the driver of such automobile was guilty of contributory negligence as a matter of law. This is a border line case, and for that very reason, we think the issues of negligence and contributory negligence ought to be submitted to a jury."

There remains for consideration the appeal by Ozela Matthews. She contends that the trial Judge erred in holding that the verdict of $2,000.00 punitive damages was excessive and in granting a new trial unless she remitted $1,250.00 of this amount. She says that the trial Judge improperly took into consideration the amount of the verdict for punitive damages awarded in the *Jeffers case* and reduced her verdict to $750.00, the same amount of punitive damages awarded Jeffers. In the order granting a new trial *nisi,* the trial Judge did compare the verdicts in the two cases and also referred to the fact that the punitive damages awarded to Ozela Matthews was twenty times the verdict for actual damages. But it is evident from a consideration of the entire order that he granted a new trial *nisi* in the exercise of his discretion. Clearly there was no abuse of discretion. On the contrary, we think it was properly exercised.

Judgment affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.