**William F. GASKINS, Appellee,**

v.

**RYDER TRUCK LINES, INC., Appellant.**

**No. 8401.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 15, 1961.

Decided Jan. 31, 1962.

Robert W. Hemphill, Chester, S. C. (Paul Hemphill and Paul Hemphill, Jr., Chester, S. C., on brief), for appellant.

deRosset Myers, Charleston, S. C., and L.W. Perrin, Spartanburg, S. C. (Edward K. Pritchard, Charleston, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, BRYAN, Circuit Judge, and NORTHROP, District Judge.

ALBERT V. BRYAN, Circuit Judge.

Collision of two motor vehicles on South Carolina Highway 62 was ad-

judged by the District Court to be the sole fault of Ryder Truck Lines, Inc., owner and operator of the tractor-trailer, in an action for personal injuries and pecuniary loss brought against Ryder by William F. Gaskins, the driver of the other car involved in the accident. With a jury waived, the Court assessed Ryder with compensatory damages of $35,000 and punitive damages of $5000. On Ryder's appeal we find no reason to disturb the judgment.

Driving a Chevrolet westwardly at a lawful speed and on the right side of the highway during the early afternoon of January 30, 1960, with visibility good but the road surface wet from recent rain, Gaskins reached the top of a hill from the east and followed the curve of the road westbound to the right. As he rounded the bend, he saw the Ryder vehicle about 100 yards away, coming up the corresponding hill from the west towards him. The truck's position in the highway is the subject of a decided conflict in the evidence.

Testimony for plaintiff Gaskins places the truck in his westbound lane, indeed so far so as to put its right wheels to the north or left of the center of the road. Ryder's contention is that the tractor-trailer had turned left to avoid the Gaskins car as it skidded into the truck's path. Gaskins admits skidding upon braking, but says the car nevertheless stayed in its proper lane. They agree that the right front of the Chevrolet made contact with the Ryder outfit, first at the right rear wheel of the tractor, and then at the rear of the trailer. Ryder's equipment jackknifed and came to rest wholly in Gaskins' lane except that the tractor was protruding southwardly over the center line into the eastbound lane. The Chevrolet was found in a ditch on the south side of the road facing east, the direction from which it had come.

The trial judge resolved the conflicts in the proof in favor of Gaskins. He found the tractor-trailer grossly negligent, in that it was occupying the westbound lane as it came up the hill, that its course was not justified or excused by

any movement of the Chevrolet, that Gaskins was in no way to blame and, finally, that Ryder's carelessness was the proximate cause of the collision.

■ Disagreeing with the appellant's first assignment, we think the District Judge's findings secure in the evidence. Aside from Gaskins' word, the wheel marks of the tractor combination, testified to by the State patrolman, put it on the wrong side of the highway. The post-collision position of the rig also convicts it. Admittedly, Gaskins' recollection of the event was suspended for several months—despite his restoration to consciousness in a day or two—and did not return to him until the following August. But this is a medically acceptable possibility. In any event his spell of amnesia went only to the weight of his testimony, to be assayed by the District Judge, who as the trier of the facts apparently appraised his recovery of memory as unfeigned and real.

Presumably, the District Judge was mindful of the sudden emergency doctrine now pressed by the appellant, but he felt it did not exonerate Ryder, for he found that the tractor-trailer was in the left lane by its own deliberate choice even before the onset of the emergency. Certain it is, he found no threat of peril caused by Gaskins: he exculpated him entirely. There was adequate evidence for this view.

Contributory negligence is imputed to Gaskins, argues the appellant Ryder, from the skidding. The authorities cited by appellant's counsel in his careful review declare skidding not of and by itself proof of negligence. There must be, as he recognizes, antecedent neglect of the operator responsible for the skidding. For this factor the tractor-trailer relies upon slickness in Gaskins' tires, contending that this condition was due to inattention in maintenance of the car. Under the evidence the Court could, and did, find otherwise.

Cross-examining the State highway patrolman, Ryder's counsel asked him what Ryder's driver had said to the officer just after the collision. Its admis-

sion was urged as a part of the res gestae. Whether it was or not, or whether it might have also been received as a prior consistent statement, became academic, for the statement came into the evidence in full when the truck-driver testified. Cf. IV Wigmore on Evidence § 1132(2) (1940). It consisted of his relation of his version of the events, and all this, swears this defendant witness, he told the officer.

To satisfy ourselves on the appellant's complaint that the trial judge unduly interrupted examination of its witnesses, we have turned to each instance cited, and also considered generally the course of the trial. We find no abuse by the judge of his position or prerogatives. Particularly adverted to is his question of the tractor driver about "Bennies", which counsel aptly describes as "stay-awake pills". Consumption of such pills by the driver had nowhere been suggested in the evidence, and actually there was nothing in the case specially prompting the inquiry. Since there was no jury and the query was on the judge's mind as a possible explanation of untoward driving by the witness, he could with propriety ask him about it. As nearly all of the witness' testimony had been completed before the discussion ensued, any intimidation of the witness was of no effect. Questions by the court which seem irrelevant to trial counsel because of his thorough familiarity with the case are naturally very often irritating and upsetting. But here there was no unfair dominance or discursion by the judge. Nothing was done or said prejudicial to the client's interests.

The compensatory award was within the competency of the proof. Serious injuries were sustained by Gaskins. His out-of-pocket expenses were nearly $5000. He suffered amnestic trauma to his skull and his face was scarred. Hospitalized three or four times, he also underwent grave spinal surgery. He had the discomfort of an extensive cast for a considerable time. Presently he is rated as having a permanent disability in his back of 20 to 25 percent and in a somewhat comparable degree in his ability to rise on his toes. Physical exertions, such as play with his children, were notably curtailed. At the time of trial, almost a year after the accident, his gait showed a limp. Returning to work in four or five months he still tired easily. In fixing $35,000 as monetary recompense, we cannot say the District Judge was too generous. Punitive damages are commonly allowed in South Carolina when the negligence—as here found in accord with the doctrine of that State—is gross. Jeffers v. Hardeman, 231 S.C. 578, 99 S.E.2d 402 (1957); Bennett v. Charleston Union Station Co., 90 S.C. 308, 73 S.E. 340 (1911). $5000 does not seem excessive.

The judgment of the District Court will be affirmed.

Affirmed.