585 S.E.2d 281

Susan JINKS, as Personal Representative of the
Estate of Carl H. Jinks, Respondent,

v.

RICHLAND COUNTY and Dr. Charles Eskridge, of whom
Richland County is Defendants–Appellant.

No. 25690.

Supreme Court of South Carolina.

Submitted May 8, 2003.
Decided Aug. 11, 2003.

Andrew F. Lindemann, William H. Davidson, II, David L. Morrison, and Alice Price Adams, of Davidson, Morrison, and Lindemann, P.A., of Columbia, for appellant.

Bradford P. Simpson, Theile Branham, and John D. Kassel, of Suggs & Kelly Lawyers, P.A.; and James Mixon Griffin, of Simmons and Griffin, L.L.C., all of Columbia, for respondent.

PER CURIAM:

Respondent Susan Jinks brought this wrongful death and survival action on behalf of her husband, Carl H. Jinks (Jinks), who died while incarcerated at Appellant Richland County's (County's) Detention Center. The jury returned a verdict in Jinks' favor.[1] County appeals.[2] We affirm.

---

1. The jury returned a defense verdict in Jinks' medical malpractice action against the detention center's physician.

2. Originally, the Court issued an opinion in this matter addressing County's claim that Jinks failed to file this action within the statute of

## *ISSUES*

■ I. Did the trial judge err by denying County's motions for a directed verdict and judgment notwithstanding the verdict on the basis Jinks failed to present evidence of gross negligence and proximate cause?

II. Did the trial judge err by failing to hold collateral estoppel barred relitigation of certain issues? [3]

## *DISCUSSION*

### *I.*

■ County asserts the trial court erred by denying its directed verdict and judgment notwithstanding the verdict (JNOV) motions because Jinks failed to establish that its correctional officers acted in a grossly negligent manner or that their alleged negligence proximately caused Jinks' death. We disagree.

The South Carolina Tort Claims Act provides that the State, its agencies, political subdivisions, and other governmental entities are "liable for their torts in the same manner and to the same extent as a private individual under like circumstances," subject to certain limitations and exemptions with the Act. S.C.Code Ann. § 15–78–40 (Supp.2002). Section 15–78–60 sets out "exceptions" to this waiver of sovereign immunity. These exceptions act as limitations on the liability of a governmental entity. One exception provides:

limitations. The Court held the federal statute tolling the applicable state statute of limitations violated the Tenth Amendment to the United States Constitution. *Jinks v. Richland County,* 349 S.C. 298, 563 S.E.2d 104 (2002). The United States Supreme Court reversed and remanded this matter to the Court for further proceedings. *Jinks v. Richland County,* —— U.S. ——, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003). Accordingly, this opinion addresses County's remaining issues.

**3.** In its Statement of Issues on Appeal, County also asserts the lower court erred by failing to grant its motions for a directed verdict and judgment notwithstanding the verdict on the basis of sovereign immunity. *See* S.C.Code Ann. § 15–78–60(4) (Supp.2002). Since County failed to argue this issue in the body of its brief, the issue is deemed abandoned. *First Savings Bank v. McLean,* 314 S.C. 361, 444 S.E.2d 513 (1994) (issues not argued in the brief are deemed abandoned and will not be considered on appeal); *Fields v. Fields,* 342 S.C. 182, 536 S.E.2d 684 (Ct.App.2000) (same).

The governmental entity is not liable for loss resulting from: responsibility or duty including but not limited to supervision, protection, control, confinement or custody of any ... prisoner, inmate ... of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner.

S.C.Code Ann. § 15–78–60(25) (Supp.2002).

 Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do. *Etheredge v. Richland School Dist. 1,* 341 S.C. 307, 534 S.E.2d 275 (2000). It is the failure to exercise slight care. *Id.* Gross negligence has also been defined as a relative term and means the absence of care that is necessary under the circumstances. *Hollins v. Richland County School Dist. 1,* 310 S.C. 486, 427 S.E.2d 654 (1993). Gross negligence is ordinarily a mixed question of law and fact. *Clyburn v. Sumter County School Dist. 17,* 317 S.C. 50, 451 S.E.2d 885 (1994).

 "In ruling on motions for directed verdict and JNOV, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions where either the evidence yields more than one inference or its inference is in doubt." *Strange v. South Carolina Dep't of Highways & Pub. Transp.,* 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994). "The trial court can only be reversed by this Court when there is no evidence to support the ruling below." *Id.* at 430, 445 S.E.2d at 440.

In his complaint, Jinks alleged County's correctional officers were grossly negligent in various ways. In particular, Jinks asserted County's employees failed to properly monitor inmates, failed to call for medical attention, and failed to provide adequate and proper medical care. At trial, Jinks argued the correctional officers' failure to properly monitor his medical condition proximately caused his death.

Viewing the evidence and its inferences in the light most favorable to Jinks, there was evidence that County was grossly negligent by failing to properly monitor Jinks' medical condition. The trial record establishes Jinks was arrested and

booked on Friday, October 14, 1994, for failure to pay child support and spent the weekend at County's detention facility. On Monday morning, Officer Williams, a first shift correctional officer, and Walter Carlo, a detention center paramedic, observed Jinks shaking, sweating, laughing, and gripping the cell bars; Jinks did not respond to conversation. Officer Williams and Paramedic Carlo determined Jinks should be seen by the detention center physician.

The detention center physician saw Jinks at noon. The medical assessment form notes Jinks' complaint as "? D.T.'s." [4] The physician diagnosed Jinks as suffering from alcohol withdrawal, prescribed Librium, and ordered that Jinks be re-evaluated in two days.

Officer Williams testified he placed Jinks in "tank one" for medical observation as directed by the paramedic. Officer Williams stated he was not instructed what symptoms or behavior to monitor. Jinks was alone in the cell. Officer Williams testified he checked on Jinks every fifteen to thirty minutes until he left work at 2:30 p.m. He did not recall speaking with Jinks. At 2:30 p.m., Jinks was still shaking, sweating, and laughing.

Officer Williams testified he returned to the jail at 6:00 the following morning. He saw Jinks lying on the cell floor at 6:30 a.m. Jinks appeared to be sleeping. Officer Williams looked in on Jinks every thirty minutes. At 9:30 a.m., he asked Jinks to get up off the floor; Jinks did so and sat on a bench.[5] Officer Williams testified, because Jinks "appeared to be okay," two other detainees were placed in his cell. When Officer Williams looked in on Jinks after 10:00 a.m., Jinks was slumped over on the cell bench and appeared to be asleep. Shortly thereafter, Jinks' cellmates notified jail attendees that Jinks needed attention. Officer Williams entered the cell.

---

4. It is undisputed Jinks did not verbally convey this complaint to the detention center staff, but rather the staff interpreted Jinks' symptoms as possible delirium tremens.

5. Officer Williams admitted his incident report, transcribed the day of Jinks' death, does not indicate he asked Jinks to get off the floor. Similarly, Officer Williams' deposition testimony does not state he asked Jinks to get off the floor.

According to the officer, Jinks' skin had darkened and he appeared to be dead.

Officer Peay testified he observed Jinks in the "holding tank" on October 17th. Jinks was sweating and pale. Officer Peay testified, when he first saw Jinks the following morning, Jinks was lying on the cell floor and appeared to be sleeping. Officer Peay did not speak to Jinks. Officer Peay stated he found Jinks dead on the cell bench at 10:30 a.m.[6]

The paramedic testified, when he entered Jinks' cell at 10:33 a.m., Jinks "had passed away for a sufficient amount of time."

The autopsy report stated Jinks' death resulted from complications from alcohol withdrawal.

Retired Richland County Detention Training Director James Haley testified that detention center officers receive instruction on alcohol and drug abuse. Part of this instruction addresses alcohol withdrawal syndrome and the progressive nature of its medical symptoms. Training materials state officers should observe all alcohol abuse admissions closely.

An expert in jail supervision and management procedure testified the Richland County Detention Center's established procedures require those inmates on medical observation to be observed every fifteen minutes for any change in condition. In addition, medical observation requires the inmate be aroused every hour to make certain his condition is not deteriorating. The expert testified, according to Officers Williams' and Peay's deposition testimony, they did not know Jinks' medical condition and, therefore, could not determine whether his condition was improving or deteriorating.

Expert witness Peter Bower, M.D., testified people suffering from alcohol withdrawal need to be observed intensively and methodically. Dr. Bower stated it was his opinion that, to a reasonable degree of medical certainty, Jinks would have survived alcohol withdrawal if he had been properly monitored.[7]

---

6. Jinks' prescription, filled by an outside pharmacy, arrived after he had passed away.

7. Dr. Bower suggested, when the officers saw Jinks on the cell floor hours before his death, he could have been recovering from a seizure rather than sleeping.

The trial judge did not err by denying County's directed verdict and JNOV motions. The evidence indicates, even though the correctional officers were aware Jinks was not well, they were not apprised of the nature of his medical condition as diagnosed by the infirmary physician, but were simply told Jinks was to be placed on medical observation. Without knowledge of Jinks' diagnosis, the officers could not have adequately monitored his condition. Failure of medical personnel to advise or the officers to inquire as to Jinks' medical condition constitutes evidence of an absence of care necessary under the circumstances amounting to gross negligence.

Assuming the officers were aware that Jinks was suffering from alcohol withdrawal, the evidence indicates the officers' monitoring of his medical condition was inadequate. Although the officers may have observed Jinks on a periodic basis, on the morning of October 18, Officers Williams and Peay neither spoke to nor aroused Jinks on an hourly basis to ensure that his condition was not deteriorating.[8] This failure was contrary to County's established detention center policies. Moreover, it was contrary to the medical expert's opinion that individuals suffering from alcohol withdrawal be observed "intensively and methodically."

Additionally, there is evidence that the correctional officers failed to observe Jinks every fifteen minutes as required by the detention center's own policies concerning medical observation. The trial record contains evidence which supports the conclusion the officers' failure to properly monitor an inmate known to be suffering from alcohol withdrawal constitutes gross negligence.

Finally, Jinks offered expert testimony that, to a reasonable degree of medical certainty, he would have survived if he had been properly monitored. Accordingly, Jinks presented evi-

---

8. County argues Jinks offered no testimony as to the actions of its employees between 2:30 p.m. on October 17 and 6:00 a.m. on October 18. Officer Williams testified the officers on other shifts had his same duties and would have been aware Jinks was under medical observation. The inference from his testimony suggests that from 2:30 p.m. on October 17 to 6:00 a.m. on October 18, Jinks received the same degree of attention that he received from Officer Williams.

dence that failure to properly monitor his medical condition proximately caused his death.

In our capacity as an appellate court, we are bound by the applicable standard of review. Since there is evidence which supports the trial judge's ruling denying County's motions for a directed verdict and JNOV, we must affirm. *Id.*

## *II.*

Initially, Jinks brought this action in the United States District Court for the District of South Carolina. Among other claims, Jinks alleged County and other defendants violated 42 U.S.C. § 1983. The district court granted the defendants' motions for summary judgment on the Section 1983 claim.

County claims that three specific rulings by the district court judge in his order granting summary judgment on Jinks' Section 1983 claim collaterally estop Jinks from recovering in this state court action. Specifically, County contends the federal court's rulings—that neither County's failure to adopt certain policies concerning medical observation nor the arrival of Jinks' medication after his death proximately caused Jinks' death—bar his present negligence claim. Additionally, County claims the district judge's finding that correctional officers did observe Jinks and followed the infirmary physician's instructions bar relitigation of this issue. We disagree.

■ Collateral estoppel prevents a party from relitigating in a subsequent suit an issue actually and necessarily litigated and determined in a prior action. *Shelton v. Oscar Mayer Foods Corp.*, 325 S.C. 248, 481 S.E.2d 706 (1997).

■ It is unnecessary for us to decide whether the federal court's findings concerning the sufficiency of County's medical observation policies and the arrival of Jinks' prescription after his death collaterally estopped Jinks' current negligence claim as Jinks presented other evidence of gross negligence.[9] Finally, the federal court's finding that correctional officers observed Jinks and followed the physician's instructions is not preclusive on the issue of whether the officers *properly* ob-

---

9. *See* Discussion I.

served Jinks. Accordingly, collateral estoppel did not bar relitigation of this issue. *Id.*

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.