608 S.E.2d 573

Ronald E. CLARK, Sr., individually and as Personal Representative of the Estate of Amy Danielle Clark, Respondent,

v.

SOUTH CAROLINA DEPARTMENT OF PUBLIC SAFETY and Charles Clyde Johnson, Defendants,

Of whom South Carolina Department of Public Safety is Petitioner.

No. 25926.

Supreme Court of South Carolina.

Heard Oct. 19, 2004.

Decided Jan. 18, 2005.

Rehearing Denied Feb. 17, 2005.

378

Andrew F. Lindemann and William H. Davidson, II, of Davidson, Morrison and Lindemann, P.A., of Columbia, for Petitioner.

Sammy Diamaduros, of White, Diamaduros & Diamaduros, of Union and Suzanne E. Coe, of Atlanta, for Respondent.

Chief Counsel Buford S. Mabry, Jr., Deputy Chief Counsel Paul S. League, Assistant Chief Counsel James A. Quinn, of Columbia for Amicus Curiae South Carolina Department of Natural Resources.

John A. O'Leary, of Columbia, for Amicus Curiae South Carolina Troopers' Association.

Mark A. Keel, of Columbia, for Amicus Curiae South Carolina State Law Enforcement Division.

Sandra J. Senn, of Charleston, for Amicus Curiae South Carolina Sheriffs' Association.

Vinton DeVane Lide, of Lexington, for Amicus Curiae South Carolina Law Enforcement Officers' Association.

Justice BURNETT.

We granted South Carolina Department of Public Safety's (the Department's) petition to review the Court of Appeals' decision in *Clark v. South Carolina Dept. of Pub. Safety,* 353 S.C. 291, 578 S.E.2d 16 (Ct.App.2002). We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Respondent Ronald E. Clark, Sr. (Clark) brought this wrongful death action as the personal representative of the estate of his daughter, Amy Danielle Clark (decedent). Clark's action against the Department and Charles Johnson[1] arises from a fatal automobile accident, which occurred on April 5, 1997. The decedent was killed when her vehicle was struck by Johnson's vehicle as he was being pursued by Trooper J.N. Bradley of the South Carolina Highway Patrol. The jury returned a $3.75 million verdict for Clark against both the Department and Johnson. The jury concluded Johnson was eighty percent at fault and the Department twenty percent at fault. The trial court reduced the Department's liability to $250,000, the allowable amount under the Tort Claims Act at the time of the verdict. The Department raises several issues on appeal.

## ISSUES

I.  Did the Court of Appeals err in concluding the trial court properly charged the jury on the standard of care owed by law enforcement officers during police pursuits?

II.  Did the Court of Appeals err in holding there was sufficient evidence showing Trooper Bradley acted with gross negligence in initiating and failing to terminate the pursuit?

III.  Did the Court of Appeals err in finding the duty of the trooper to drive with due regard for the safety of all persons is independent of the duty of the Department to monitor the pursuit?

IV.  Did the Court of Appeals err in holding the trial court properly denied the Department's motions for judgment as a matter of law on the ground of discretionary immunity?

V.  Did the Court of Appeals err in refusing to grant a new trial absolute based on the amount of the jury's verdict?

---

1.  Johnson is not a party to this appeal.

## I.

■ The Department contends the Court of Appeals erred in determining the trial court properly instructed the jury on the legal duty owed by law enforcement officers with respect to police pursuits. We disagree.

We find no error in the trial judge's instructions. The parties agreed the applicable standard of care is gross negligence.[2] The trial court defined gross negligence as "the failure to exercise a slight degree of care" and stated gross negligence could also "mean when a person is so indifferent to the consequences of his conduct as not to give slight care as to what he is doing." The definition provided by the trial court is consistent with South Carolina law. *See Faile v. South Carolina Dept. of Juvenile Justice,* 350 S.C. 315, 331–32, 566 S.E.2d 536, 544 (2002); *Hicks v. McCandlish,* 221 S.C. 410, 415, 70 S.E.2d 629, 631 (1952).

## II.

■ The Department contends the Court of Appeals erred in concluding the trial court did not err in refusing to direct a verdict and grant the Department's motion for judgment notwithstanding the verdict (JNOV) on Clark's claims that Trooper Bradley was grossly negligent in his decision-making. The Department argues there was no evidence to support a verdict that Trooper Bradley was grossly negligent. We disagree.

■ In ruling on a motion for directed verdict and JNOV, a court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Swinton Creek Nursery v. Edisto Farm Credit, ACA,* 334 S.C. 469, 476, 514 S.E.2d 126, 130 (1999). The trial court should deny the motion where either the evidence yields more than one inference or its inference is in doubt. *Jinks v. Richland County,* 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003). This Court will

---

2. The Court of Appeals noted that no issue was raised on appeal regarding the standard for culpability and therefore becomes the law of the case. *Citing ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 489 S.E.2d 470 (1997) (an unappealed ruling becomes the law of the case and precludes further consideration of the issue on appeal).

reverse the trial court's ruling on a directed verdict motion only where there is no evidence to support the ruling or where the ruling is controlled by error of law. *Hinkle v. National Cas. Ins. Co.*, 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003).

■ The trial court properly submitted the case to the jury to consider whether Trooper Bradley was grossly negligent in initiating and failing to terminate the pursuit. Gross negligence is the "intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Jinks*, 355 S.C. at 345, 585 S.E.2d at 283. Gross negligence is also the "failure to exercise slight care" and is "a relative term and means the absence of care that is necessary under the circumstances." *Id.*

The evidence in this case could yield a finding of gross negligence on the part of Trooper Bradley. On April 5, 1997, at approximately 1:30 a.m., Trooper Bradley observed Johnson driving a van erratically and at a speed of 57 m.p.h. in a 45 m.p.h. zone. In addition to driving erratically, Johnson failed to use his turn signals. Bradley testified he activated his blue lights and siren and attempted to stop the van, but Johnson did not stop. Bradley called in the van's license plate number and reported to dispatchers he was pursuing the van.

During the pursuit, Johnson stopped the van in a gravel parking lot. Bradley exited his vehicle and approached the van. As Bradley neared the van, Johnson suddenly put the van in reverse and attempted to run over Bradley. Johnson sped off and the pursuit resumed. Bradley observed Johnson run off the left side of the road and spin around. Bradley testified he radioed in his belief Johnson was going to wreck.

Trooper Thomas Justice joined the pursuit and attempted to slow the van by pulling in front of it. Johnson drove around Justice and Justice fell into position behind Bradley. Justice, as the secondary officer in the pursuit, took over most of the radio communications so Bradley could focus on the pursuit.

Bradley continued the pursuit and dispatchers notified the troopers the van had been reported stolen. Bradley testified he observed light traffic as they drove through a straight portion of the road. Bradley attempted to pass Johnson on the left in an attempt to get in front of the van in order to

slow its speed, but was unsuccessful when Johnson tried to run Bradley off the road. Johnson ran a red light at an intersection, narrowly avoiding colliding with another car. The troopers slowed and proceeded through the intersection.

Johnson encountered a pickup truck in his lane of traffic approximately five or six miles before reaching the North Carolina border. Johnson tried to pass the truck on the right using the emergency lane, but the truck also pulled to the right. Johnson immediately jerked the van to the left, crossed the centerline, and collided head-on with Amy Clark's vehicle. The van became airborne before crashing into the woods and catching fire.

Sergeant John Vaughn testified he was the district supervisor on call that night. Vaughn inquired whether a supervisor was needed when he heard Bradley advise dispatchers he was initiating a pursuit. Vaughn could not recall whether he had actually monitored any portion of the pursuit. The second-shift supervisor, Lonnie Plyler, did not monitor the pursuit because he was handling the administration of a breathalyzer examination. Plyler did not know who supervised the third shift. Plyler went to the scene of the accident after Justice radioed for a supervisor.

Samuel Killman, Clark's expert on high-speed pursuits, testified the standard of care for an officer pursuing a suspect requires the officer continuously evaluate the danger of the chase and weigh the danger of apprehending the suspect against the danger the chase is creating. Clark's counsel asked Killman if there was any point during the chase where he felt Bradley deviated from the standard of care. Killman testified he believed Bradley should have terminated the pursuit because the longer the chase went on, the clearer it became that Johnson was not going to stop. Killman further testified that supervisors are required to continually monitor pursuits.

Gregory Smith, the Department's expert in police training and pursuits testified, "there is no national standard for standard of care." Smith testified the chase initiated by Bradley was warranted and should not have been terminated by either Bradley or his supervisors. Smith based his testi-

mony on the factors outlined in the Department's Vehicle and Foot Pursuit Policy.

The Court of Appeals, construing the evidence in a light most favorable to Clark, concluded the pursuit should have been called off after it was (1) obvious Johnson was willing to do whatever it took to get away; and (2) after Johnson attempted to run Bradley off the road and then narrowly missed colliding with another vehicle at the intersection. The Court of Appeals also noted Johnson was within five or six miles of the North Carolina border at which point South Carolina authorities would have been required to terminate the pursuit. Finally, the Court of Appeals concluded the "heightened dangerousness of the pursuit" was evidenced by evidence Bradley notified the dispatcher he believed a crash was imminent. *Clark*, 353 S.C. at 302, 578 S.E.2d at 22.

From this testimony, the Court of Appeals concluded there was some evidence from which a jury could conclude Bradley was grossly negligent in failing to end the pursuit. *Id.* We agree. Killman, an experienced law enforcement officer, testified the officer should have discontinued the pursuit. In addition, Bradley testified he did not feel the van was going to stop and he realized the van was probably going to make it to North Carolina where Bradley would be required to terminate the pursuit. Accordingly, the issue was properly submitted to the jury.

## III.

■ The Department argues the Court of Appeals, in affirming the trial court's denial of the Department's motion for JNOV, erred in finding the duty to monitor or supervise the pursuit to be an independent duty. The Department contends Clark's negligent supervision claim is entirely derivative of the claim Trooper Bradley was grossly negligent in commencing the pursuit and failing to terminate the pursuit before the accident occurred. The Department contends because the jury did not indicate Bradley breached his duty of care, the Department should not be held liable for the derivative claim of failure to supervise.

Under the facts of this case and given the evidence presented at trial, we conclude the Department was not entitled to

judgment as a matter of law on the failure to supervise claim. *Jinks,* 355 S.C. at 345, 585 S.E.2d at 283 (trial court should deny the motion where either the evidence yields more than one inference or its inference is in doubt). The jury could have found the Department breached a separate duty to monitor the pursuit and to provide its independent assessment of its continued viability. Based on the evidence presented, the jury could have found the Department failed to exercise slight care or show any care in monitoring the pursuit and the Department's gross negligence was a proximate cause of the accident.

## IV.

The Department contends the Court of Appeals erred in holding Trooper Bradley's conduct was not protected by discretionary immunity. We disagree.

South Carolina Code Ann. § 15–78–60(5) (Supp.2003) provides governmental entities are not liable for losses resulting from "the exercise of discretion or judgment by the governmental entity or employee for the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee." The burden of establishing an exception to the waiver of immunity is on the governmental entity asserting the defense. *Niver v. South Carolina Dept. of Hwy. & Pub. Transp.,* 302 S.C. 461, 395 S.E.2d 728 (Ct.App.1990). To establish discretionary immunity, the governmental entity must prove its employees, faced with alternatives, actually weighed competing considerations and made a conscious choice. *Pike v. Dept. of Transp.,* 343 S.C. 224, 540 S.E.2d 87 (2000). The governmental entity must show that in weighing the competing considerations and alternatives, it utilized accepted professional standards appropriate to resolve the issue before them. *Id.* Mere room for discretion on the part of the entity is not sufficient to invoke the discretionary immunity provision. *Summer v. Carpenter,* 328 S.C. 36, 492 S.E.2d 55 (1997).

Police officers have a duty to apprehend those who violate the law and the decision to commence or continue pursuit of a fleeing suspect is, by necessity, made rapidly. However, a police officer's paramount duty is to protect the

public. We acknowledge circumstances exist when it is reasonable for a police officer to adopt a course of conduct which causes a high risk of harm to the public. Nevertheless, such conduct is not justified if the public is subjected to unreasonable risks of injury as the police carry out their duties. We conclude that a law enforcement officer is not immune from liability under Section 15–78–60(5) for the decision on whether to begin or continue the immediate pursuit of a suspect.[3]

## V.

The Department contends the Court of Appeals erred in finding a new trial absolute was not warranted based on the $3.75 million verdict in favor of Clark.

The Department argues the verdict is grossly excessive and shockingly disproportionate to the injuries therefore indicating the jury acted out of passion, caprice, prejudice, or other considerations not founded in the evidence. Specifically, the Department argues the decedent had reached the age of majority and no longer resided with her parents for whom she did not provide financial support. The Department argues the only damages recoverable would be for the loss of companionship, grief, wounded feelings, and funeral expenses.

In *Knoke v. South Carolina Department of Parks, Recreation, and Tourism*, 324 S.C. 136, 478 S.E.2d 256 (1996), we concluded a wrongful death verdict of $3 million for the death of a twelve-year-old child was not excessive and was necessary to compensate the child's parents for intangible damages which, cannot be determined by any fixed measure. *See also Lucht v. Youngblood*, 266 S.C. 127, 221 S.E.2d 854 (1976) (losses to parents for the untimely death of a child are intangibles, the values of which cannot be determined by any fixed yardstick). Furthermore, pecuniary loss is only one of six elements to be considered in awarding damages in a wrongful death action. *See Self v. Goodrich*, 300 S.C. 349, 387 S.E.2d 713, 714 (Ct.App.1989). Accordingly, we affirm the

---

3. The Department contends the Court of Appeals created a distinction between planning and operational activities in determining Bradley's conduct was not subject to discretionary immunity. We decline at this time and under the facts of this case to recognize such a distinction.

Court of Appeals' decision upholding the jury's award of damages.

For the foregoing reasons, we affirm the Court of Appeals' opinion.

**AFFIRMED.**

TOAL, C.J., MOORE and WALLER, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES.

I concur in the result reached by the majority, but would adopt the decision of the Court of Appeals in its entirety. *See, supra,* n. 3; *see also Clark v. S.C. Dep't of Pub. Safety,* 353 S.C. 291, 305–06, n. 23 & nn. 26–28, 578 S.E.2d 16 (Ct.App. 2002). I believe the Court of Appeals properly recognized the dichotomy between planning and operational acts in determining the application of discretionary immunity.