742 S.E.2d 667

Diane BASS and Otis Bass, Individually and as Parents and Guardians of Alex B., a minor under the age of ten (10) years, and Hanna B., a minor under the age of ten (10) years, Respondents,

v.

SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Appellant.

Appellate Case No. 2011–195866.

No. 5093.

Court of Appeals of South Carolina.

Heard Jan. 9, 2013.

Decided Feb. 27, 2013.

Patrick J. Frawley, of Davis, Frawley, Anderson, McCauley, Ayer, Fisher & Smith, LLC, of Lexington, for Appellant.

Lee Deer Cope, of Peters, Murdaugh, Parker, Eltzroth & Detrick, PA, of Hampton, and John K. Koon and Jamie L. Walters of Koon & Cook, P.A., of Columbia, for Respondents.

THOMAS, J.

This tort case involves the placement of Otis and Diane Bass's minor children by the South Carolina Department of Social Services (DSS) after the children became ill. The Basses alleged DSS failed to conduct a thorough investigation before deciding to remove the children from their custody. DSS admitted the investigation was not thorough, but argued its involvement with the family showed at least slight care. In a general verdict, the jury found for the Basses on both their gross negligence and intentional infliction of emotional distress causes of action. DSS appeals the denial of its motion for JNOV, arguing the trial court erred in holding jury questions existed as to whether: (1) DSS was grossly negligent in investigating the family; (2) the Basses voluntarily participated in the children's relative placement; and (3) DSS was liable under an intentional infliction of emotional distress theory. We reverse.

## FACTS AND PROCEDURAL HISTORY

On April 30, 2008, Diane Bass refilled her children's prescription at Long's Drugs. Unbeknownst to anyone at the

time, the pharmacist mixed the prescription at a concentration of over one thousand times the prescribed strength. When the Basses administered the medication to their children on May 15, 2008, two children became sick, resulting in their hospitalization. DSS responded to the hospital after receiving a report of a potential parental poisoning. Within twenty-four hours, the Basses signed a document entitled "Safety Plan," in which the Basses agreed their children would reside with a relative, Linda Sims. On June 17, 2008, an insurance representative contacted DSS and indicated the children's prescription may have been filled at too strong a dose. As a result, DSS returned the children to the Basses on June 25, 2008.

The Basses filed a complaint against DSS, Long's Drugs, and the pharmacist who filled the prescriptions. After settling with Long's Drugs and the pharmacist, the Basses filed an amended complaint solely against DSS. The amended complaint raised three causes of action: (1) defamation; (2) gross negligence; and (3) intentional infliction of emotional distress. The gross negligence and intentional infliction of emotional distress claims alleged DSS was grossly negligent and reckless, respectively, in placing the children in DSS custody without properly investigating the claims against the Basses.

DSS answered and denied the Basses' claims. Specifically, DSS affirmatively alleged DSS took appropriate steps to secure the safety of the children and the Basses voluntarily signed the Safety Plan to place the children with a relative. DSS also raised as an affirmative defense that the harm caused to the Basses was caused by Long's Drugs's intervening negligence as a third party.

Monique Parish, the DSS caseworker assigned to the Basses, testified by deposition at trial. According to Parish, she responded to the hospital forty-five minutes after receiving the initial complaint against the Basses. Parish further testified she retrieved the children's lab results when she arrived at the hospital, but they were inconclusive as to poisoning. Parish, however, did admit she never talked to a doctor about the poisoning during her initial investigation. Parish also explained she met with the Basses when she responded to the hospital, gave them a brochure explaining the investigation,

and had them sign releases concerning the children's medical information. The Basses' expert in child protection services, Michael Corey, opined during trial that Parish did not exercise slight care in conducting her investigation.

After the Basses rested their case, DSS moved for directed verdicts on all causes of action. DSS argued the Basses failed to present any evidence of gross negligence and all of the evidence presented showed DSS exercised slight care. The Basses further asserted they were entitled to a directed verdict on the intentional infliction of emotional distress claim because the South Carolina Tort Claims Act (the Act) excludes "intentional infliction of emotional harm" from the definition of a recoverable loss. The trial court denied the motions. DSS renewed its motion at the close of its case, which the trial court denied.[1]

The jury returned a verdict against DSS, finding DSS liable to the Basses in the amount of $4,000,000. DSS made various post-trial motions. DSS first moved for a JNOV on the same grounds set forth in its directed verdict motion during trial. DSS also moved for a JNOV because the Basses voluntarily agreed to the placement of their children with relatives after having been advised of their legal rights. DSS further asked the trial court to reduce the verdict to $140,000 due to a lack of evidence indicating either the parents or children were damaged in any appreciable way by the placement. In the alternative, DSS sought to have the verdict reduced to $600,000 as provided by the Act's statutory cap.

The trial court granted DSS's motion to reduce the verdict to $600,000, but denied the JNOV motions. First, the trial court found evidence in the record existed from which a jury could decide DSS did not exercise slight care before removing the children. Second, the trial court found the Act does not preclude recovery for intentional infliction of emotional distress claims so long as the conduct underlying the claim constitutes recklessness. Additionally, the trial court found the lack of any investigation by DSS before the removal and "the unique circumstances of the family and the hospitalization of the children," could support a finding that DSS recklessly

---

1. The Basses withdrew their defamation claim at this time.

inflicted emotional distress on the Basses. This appeal followed.

## ISSUES ON APPEAL

I.   Did the trial court err in denying DSS's JNOV motion on the gross negligence cause of action?

II.  Did the trial court err in denying DSS's JNOV motion because the record does not support a finding that the children's placement was involuntary?

III. Did the trial court err in denying DSS's JNOV motion on the intentional infliction of emotional distress cause of action?

## STANDARD OF REVIEW

"In ruling on motions for directed verdict and JNOV, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions where either the evidence yields more than one inference or its inference is in doubt." *Strange v. S.C. Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994). "The trial court can only be reversed by this [c]ourt when there is no evidence to support the ruling below." *Jinks v. Richland Cnty.*, 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003).

## ANALYSIS

### I.  Gross Negligence

DSS argues the trial court erred in denying its JNOV motion on the gross negligence cause of action because no evidence in the record showed DSS was grossly negligent in placing the children. We agree.

"The governmental entity is not liable for a loss resulting from ... responsibility or duty ... except when the responsibility or duty is exercised in a grossly negligent manner." S.C.Code Ann. § 15–78–60(25) (2005). Gross negligence is proved by demonstrating the "intentional conscious failure to do something which is incumbent upon one to do or the doing of a thing intentionally that one ought not to do," or "the failure of slight care." *Jinks*, 355 S.C. at 345, 585 S.E.2d

at 283. It has also been defined as the absence of care that is necessary under the circumstances. *Id.* Whether a defendant's actions are grossly negligent is ordinarily a mixed question of law and fact. *Id.*

Within twenty-four hours of receiving a report of suspected child abuse or neglect, "[DSS] must begin an appropriate and thorough investigation to determine whether a report of suspected child abuse or neglect is 'indicated' or 'unfounded.'" S.C.Code Ann. § 63–7–920(A)(1) (2010); *see also Jensen v. S.C. Dep't of Soc. Servs.*, 297 S.C. 323, 331–32, 377 S.E.2d 102, 106–07 (Ct.App.1988) (holding the sections mandating DSS investigate and intervene to remove an endangered child from the home create a special duty).

Based on the evidence in the record, we hold the trial court erred in denying DSS's motion for a JNOV on the Basses' gross negligence cause of action. Initially, the record indicates Parish responded to the hospital within forty-five minutes of the reported parental poisoning. Parish testified the children were classified as a medium danger rating, allowing Parish merely twenty-four hours to conduct her investigation, pursuant to DSS policy. We find this time constraint, which has been specifically recognized by our supreme court, to be particularly important in our determination. *See Spartanburg Cnty. Dep't of Soc. Servs. v. Little*, 309 S.C. 122, 125, 420 S.E.2d 499, 501 (1992) (declining to award attorney's fees against DSS in a child abuse and neglect case because "DSS often must act quickly and without thorough investigation to remove children who may have been abused or neglected from potentially dangerous situations"). In that time, Parish interviewed family members and learned the children became sick after Mrs. Bass administered their medicine. Parish also obtained the Basses' consent to have the children's medical information released to DSS. Although it was ultimately inconclusive, Parish further obtained the children's toxicology report. While far from perfect, there is no evidence in the record indicating DSS failed to exercise slight care.

The Basses contend Michael Corey's expert opinion that DSS failed to exercise slight care is sufficient to defeat DSS's motion for JNOV. During his testimony, Corey opined DSS failed to exercise slight care and prefaced his opinion on

DSS's duty to investigate the allegations of abuse and neglect. The record, however, is devoid of any indication that Corey in any way took into account the expediency with which DSS must investigate claims of abuse and neglect. Consequently, Corey failed to establish his opinion was based upon a proper statement of DSS's duty; therefore, it could not, without more, defeat DSS's motion for JNOV. *Cf. Harris Teeter, Inc. v. Moore & Van Allen, PLLC,* 390 S.C. 275, 289, 701 S.E.2d 742, 749 (2010) (finding an expert's testimony insufficient to defeat a motion for summary judgment when the expert failed to predicate his testimony on the correct standard of care). Accordingly, we hold the trial court erred in denying DSS's motion for a JNOV as to the gross negligence cause of action.

## II. Voluntary Placement

DSS argues the trial court erred in denying its JNOV motion because the Basses voluntarily participated in the placement of the children. Only grounds raised in a directed verdict motion, however, can be properly reasserted in a motion for a JNOV. *In re McCracken,* 346 S.C. 87, 93, 551 S.E.2d 235, 238 (2001); *see also RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.,* 399 S.C. 322, 331, 732 S.E.2d 166, 171 (2012) ("A motion for a JNOV is merely a renewal of the directed verdict motion."). DSS never argued it was entitled to a directed verdict based on the Basses' voluntary placement of the children; therefore, DSS cannot properly raise this issue. Even if properly raised, this issue would still not be preserved for review because the trial court never made any sort of ruling with respect to the Basses' voluntariness in its order denying DSS's JNOV motion. *See Herron v. Century BMW,* 395 S.C. 461, 465, 719 S.E.2d 640, 643 (2011) (noting an issue must be raised to and ruled upon by the trial court to be preserved for appellate review). Thus, we decline to address this issue because it is not preserved for our review.

## III. Intentional Infliction of Emotional Distress

DSS argues the trial court erred in denying its JNOV motion on the Basses' intentional infliction of emotional distress claim. We agree.

■ To recover under an intentional infliction of emotional distress theory, a plaintiff must establish

(1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;

(2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;"

(3) the actions of the defendant caused plaintiff's emotional distress; and

(4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could expect to endure it."

*Argoe v. Three Rivers Behavioral Health, L.L.C.*, 392 S.C. 462, 475, 710 S.E.2d 67, 74 (2011) (quoting *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007)). During trial and in their complaint, the Basses asserted their intentional infliction of emotional distress claim was based on DSS's reckless rather than intentional conduct. South Carolina courts have long recognized that an individual's negligent conduct can be so gross as to amount to recklessness. *See Berberich v. Jack*, 392 S.C. 278, 287, 709 S.E.2d 607, 612 (2011); *Jeffers v. Hardeman*, 231 S.C. 578, 582, 99 S.E.2d 402, 404 (1957). The juxtaposition of this principle mandates an individual's conduct cannot be reckless where it was not at least grossly negligent. *See also* 18 S.C. Jur. Negligence § 9 (2012) ("Recklessness is a higher degree of negligence than gross negligence."). Thus, based on our prior determination that DSS was not grossly negligent in investigating the Basses' case, DSS's conduct was not reckless as a matter of law. Accordingly, the trial court erred in denying DSS's motion for a JNOV.

## CONCLUSION

Based on the foregoing, we reverse the trial court's denial of DSS's motions for JNOV on the Basses' gross negligence and intentional infliction of emotional distress causes of action.

**REVERSED.**

HUFF and GEATHERS, JJ., concur.