# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Travis A. Roddey, as the Personal Representative of the Estate of Alice Monique Beckham Hancock, deceased, Petitioner,

v.

Wal-Mart Stores East, LP, U.S. Security Associates, Inc., and Derrick L. Jones, Respondents.

Appellate Case No. 2012-213375

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Lancaster County
Brooks P. Goldsmith, Circuit Court Judge

---

Opinion No. 27615
Heard October 8, 2015 – Filed March 30, 2016

---

## REVERSED AND REMANDED

---

John S. Nichols and Blake Alexander Hewitt, both of Bluestein Nichols Thompson & Delgado, LLC, of Columbia; S. Randall Hood and William Angus McKinnon, both of McGowan Hood & Felder, LLC, of Rock Hill; and Brent Paul Stewart, of Stewart Law Offices, LLC, of Rock Hill, for Petitioner.

W. Howard Boyd, Jr., and Stephanie G. Flynn, both of Gallivan, White & Boyd, PA, of Greenville, for Respondents.

---

**ACTING JUSTICE TOAL:**    Petitioner appeals the court of appeals' decision affirming the trial court's grant of Wal-Mart's motion for a directed verdict on Petitioner's negligence claim.  We reverse and remand for a new trial.

### FACTUAL/PROCEDURAL BACKGROUND

The following facts are undisputed.  On June 20, 2006, Alice Hancock waited in her vehicle in the parking lot of Wal-Mart while her sister, Donna Beckham, attempted to shoplift several articles of clothing.[1]  Hope Rollings, a Wal-Mart customer service manager, noticed Beckham attempting to shoplift and alerted several other employees, including fellow manager Shawn Cox and the on-duty security guard Derrick Jones of U.S. Security Associates, Inc. (USSA), which provided security in the Wal-Mart parking lot pursuant to a contract with Wal-Mart.

Ultimately, Beckham exited Wal-Mart without the clothing.  However, Jones approached her in the parking lot.  Beckham ran towards Hancock's vehicle, and Jones followed her in his truck and blocked Hancock's vehicle with his truck.  After Beckham entered Hancock's vehicle, Hancock turned the vehicle around and drove towards the parking lot's exit, with Jones following.  Hancock exited the parking lot onto a highway, and Jones followed.  Approximately two miles from Wal-Mart, Hancock's vehicle left the highway and crashed.  Hancock died at the scene of the accident.

Travis Roddey, the personal representative of Hancock's estate (Petitioner), brought an action alleging negligence on the part of Wal-Mart, USSA, and Jones.  At trial, there was varying witness testimony, especially with regard to the course of events that occurred between Jones and the two Wal-Mart customer service managers—Rollings and Cox—and between Jones and Beckham.

Beckham testified that when she exited Wal-Mart, she heard Jones yelling from his vehicle, "Hey, I need to talk to you."  According to Beckham, Jones

---

[1] Beckham testified that Hancock was unaware of her intention to shoplift from Wal-Mart.

"zoomed in on [them]" and blocked Hancock's vehicle as she entered Hancock's backseat. Beckham testified that she remained crouched in the backseat as they drove, but looked up periodically to see Jones following behind them at a close distance with his emergency lights on and frequently flashing his high beam headlights. Beckham testified that about two miles from Wal-Mart, Hancock remarked that "he's still on our ass," Beckham observed Jones "on [their] bumper," and then Hancock's vehicle "shot off to the left" and crashed.

Rollings testified that when she saw Beckham attempting to shoplift, she radioed Cox,[2] and instructed the door greeters to stop Beckham and ask for a receipt if she exited the store. Rollings explained that she then walked to the parking lot and notified Jones of the suspected shoplifting. Rollings testified that she did not have authority or responsibility over Jones, and that she did not intend for Jones to approach, delay, or stop Beckham. Rollings acknowledged that Wal-Mart policy prohibited employees from pursuing shoplifters beyond the parking lot,[3] but testified that she could not radio Jones to tell him to stop pursuing

---

[2] Cox testified that the night of the incident, the following employees had radios: Cox, Rollings, Jones, and assistant manager Chuck Campbell.

[3] Specifically, Wal-Mart's policy for investigating and detaining suspected shoplifters provides:

> NEVER pursue a fleeing Suspect more than approximately 10 feet beyond the point you are located when the Suspect begins to run to avoid detention. Ten feet is about three long steps. This limitation applies both inside and outside the facility.
>
> NEVER pursue a Suspect who is in a moving vehicle.
>
> NEVER pursue a Suspect off the Facility's property.
>
> NEVER use a moving vehicle to pursue a Suspect.
>
> TERMINATE the pursuit of a Suspect, if the Suspect begins to enter a vehicle.
>
> LET THE SUSPECT GO, rather than continue a pursuit that is likely to injure or cause harm to someone.

Hancock's vehicle because only one person could speak into the radio at a time, and other employees were using the radio during the incident. Further, she remembered Cox telling Jones to "[j]ust get the tag number [from Hancock's vehicle,]" but was unsure whether Cox knew that Jones was pursuing Hancock's vehicle when Cox gave the instruction to Jones.

Cox testified that the night of the incident, Rollings notified her of Beckham's shoplifting. After Beckham abandoned the clothing and exited Wal-Mart, Cox walked outside and saw Jones driving down the aisle of the parking lot where Hancock's vehicle was parked. Cox testified that Hancock's vehicle struck a median in the parking lot and headed toward the exit, at which point Cox instructed: "Get her tag number." Cox testified that she did not intend for Jones to follow Hancock out of the parking lot and acknowledged that it was Wal-Mart policy not to pursue shoplifters, but stated that Jones was not a Wal-Mart employee. According to Cox, she observed Jones's truck two car lengths behind Hancock's vehicle as they exited the parking lot, but that Jones was less than two car lengths behind as she saw them driving away.

Jones testified that the night of the incident, he received a call on his radio informing him that Beckham shoplifted and that she was exiting Wal-Mart. According to Jones, he asked: "[W]hat do you want me to do because I'm a security officer; I'm not a police officer. I cannot detain, so what do you want me to do?" Jones testified that he was instructed to delay Beckham by talking to her. When he saw her exit the store, he attempted to engage her in conversation, at which point she ran to Hancock's vehicle. Jones testified that he then blocked Hancock's vehicle with his truck "because the whole time all [he was] hearing from [Wal-Mart] was, 'You've got to get that license plate tag. We need that license plate tag number.'" Jones testified that at the time, he was under the impression that if he did not get the license plate tag number, he could be fired for not doing his job. According to Jones, both Rollings and Cox repeatedly instructed him to get the license plate tag number. After telling them that he could not see the tag number and that Hancock's vehicle was "about to leave the parking lot," Jones

Further, the Guidelines for Private Security Contractors provide that security contractors are prohibited from using their vehicles in an attempt to apprehend any suspects, and only allow their vehicles to leave Wal-Mart property for gas or maintenance of the vehicle. These guidelines also note that it is the responsibility of Wal-Mart management to enforce Wal-Mart policies and procedures.

testified that through the radio, someone said, "Man, well, you got to do what you got to do. You need to get that license plate tag number."

Jones knew that he was not supposed to leave the parking lot, but stated that he felt pressure due to the instruction to "do what you got to do," which Jones interpreted to mean pursuing Hancock's vehicle beyond the parking lot. Jones testified that even after he told Wal-Mart employees over the radio that Hancock's vehicle was leaving the parking lot, Wal-Mart employees continued to instruct him to obtain the license plate tag number. Jones stated that he was in radio communication with Wal-Mart employees until a highway on-ramp, where he witnessed Hancock's vehicle almost cause an accident. He then lost sight of Hancock's vehicle until he later saw lights flashing on the side of the road, where he found Beckham screaming for help and Hancock severely injured.

Jeff Gross, Petitioner's expert witness in parking lot security, guard force, and loss prevention, testified that several of Wal-Mart's policies were violated "through tacit approval of [Wal-Mart]." Gross further testified that Wal-Mart "didn't do anything to stop [Jones] . . . . [T]hey told him to go out and get [the] license plate number, with that they didn't give any other instruction or guidance." Gross stated that "the very headwaters of this problem starts with [Wal-Mart employees] not following their own policies [and] asking [Jones] to do something that [Wal-Mart] specifically says they won't do themselves and they don't want their contractors to do." Finally, Gross testified that Cox witnessed the pursuit and had enough time to process the information, yet chose not to use the radio to instruct Jones to end the pursuit. Based on the testimony of the parties involved in the incident, Gross opined that there was sufficient range on the radios to communicate beyond the Wal-Mart parking lot.

Chip Tipton, a representative for Wal-Mart, testified that he saw no evidence that any Wal-Mart employee violated Wal-Mart policies, and found no fault in the employees' failure to instruct Jones to end the pursuit. Regardless, Tipton stated that he did not believe the radio's range would have enabled Wal-Mart employees to call Jones back because there were often issues with radio transmission inside Wal-Mart itself.

At the conclusion of Petitioner's case, Wal-Mart moved for a directed verdict on three grounds: (1) Petitioner presented no evidence that Wal-Mart breached its duty of care; (2) Wal-Mart's actions were not the proximate cause of Hancock's death as a matter of law; and (3) Hancock's fault in causing her own death was

more than fifty percent as a matter of law.  The trial court granted the motion on Wal-Mart's first two grounds, finding insufficient evidence that Wal-Mart was negligent, and that even if Wal-Mart was negligent, there was a lack of proximate cause because the events were not foreseeable.  The trial court stated that at that point, it could not find Hancock more than fifty percent negligent as a matter of law.  Upon the conclusion of trial, the jury found that Hancock was sixty-five percent at fault, and that USSA and Jones were collectively thirty-five percent at fault.

The court of appeals affirmed the trial court's decision to grant Wal-Mart's motion for a directed verdict in a split opinion.  *See Roddey v. Wal-Mart Stores E., LP*, 400 S.C. 59, 732 S.E.2d 635 (Ct. App. 2012).  Chief Judge Few found that the trial court should not have directed a verdict on the basis that there was insufficient evidence of Wal-Mart's negligence because evidence existed that Wal-Mart employees violated Wal-Mart policies.  Chief Judge Few further found that the actions of Jones and Hancock were foreseeable.  Nevertheless, Chief Judge Few determined that the trial court should have granted Wal-Mart's directed verdict motion on the following grounds:  (1) the jury's factual determination of fault apportionment between Hancock, Jones, and USSA was binding on Petitioner even though Wal-Mart's actions were not included in the jury's analysis; and (2) Hancock was more than fifty percent at fault as a matter of law.  Judge Short concurred in a separate opinion, finding that Wal-Mart was entitled to a directed verdict because it was not foreseeable that Jones would leave the parking lot and continue to aggressively pursue Hancock for several miles.

Judge Huff dissented, agreeing with Chief Judge Few that evidence existed from which a jury could find that Wal-Mart was negligent, and that negligence proximately caused the injuries that occurred.  Judge Huff also stated that while a jury still could have found Hancock sixty-five percent negligent even after considering Wal-Mart's liability, it could also have conceivably found—after factoring in Wal-Mart's negligence—that Hancock was less than fifty percent at fault.  Accordingly, Judge Huff opined that the trial court should have submitted the issues of negligence and proximate cause to the jury.

We granted Petitioner's petition for a writ of certiorari to review the court of appeals' decision pursuant to Rule 242, SCACR.

STANDARD OF REVIEW

When ruling on a motion for a directed verdict, the trial court must view all evidence and all reasonable inferences in the light most favorable to the nonmoving party, and if the evidence is susceptible of more than one reasonable inference, the trial court should submit the case to the jury. *Unlimited Servs., Inc., v. Macklen Enters., Inc.*, 303 S.C. 384, 386, 401 S.E.2d 153, 154 (1991). In a comparative negligence case, the trial court should grant a directed verdict motion if the sole reasonable inference from the evidence is the nonmoving party's negligence exceeded fifty percent. *Bloom v. Ravoira*, 339 S.C. 417, 422, 529 S.E.2d 710, 712 (2000). Comparing the negligence of two parties is ordinarily a question of fact for the jury. *Creech v. S.C. Wildlife & Marine Res. Dep't*, 328 S.C. 24, 32, 491 S.E.2d 571, 575 (1997). This Court is "reticent to endorse directed verdicts in cases involving comparative negligence." *Thomasko v. Poole*, 349 S.C. 7, 11, 561 S.E.2d 597, 599 (2002).

## ANALYSIS

Viewing the evidence in the light most favorable to the nonmoving party— Petitioner—we find that there is evidence from which a jury could determine that Wal-Mart was negligent, and that its negligence proximately caused the injuries in this case. Accordingly, we hold that the trial court should have submitted to the jury the issues of Wal-Mart's negligence and proximate cause, and we remand for a new trial as to all of the defendants.

### I.      *Evidence of Wal-Mart's Breach of its Duty of Care*

To prove a cause of action for negligence, a plaintiff must show: (1) the defendant owes a duty of care to the plaintiff; (2) the defendant breached that duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages. *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135, 638 S.E.2d 650, 656 (2006). In a given case, a court may establish and define the standard of care by looking to the common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines. *Id.* at 140, 638 S.E.2d at 659. Evidence of a company's deviation from its own internal policies is relevant to show the company deviated from the standard of care, and is properly admitted to show the element of breach. *Peterson v. Nat'l R.R. Passenger*

*Corp.*, 365 S.C. 391, 397, 618 S.E.2d 903, 906 (2005); *see also Caldwell v. K-Mart Corp.*, 306 S.C. 27, 31, 410 S.E.2d 21, 24 (Ct. App. 1991) (holding that K-Mart's loss prevention manual was relevant on the material issue of the reasonableness of K-Mart's actions, and noting that in negligence cases, internal policies or self-imposed rules are often admissible as relevant on the issue of failure to exercise due care (citations omitted)).

There is evidence that Wal-Mart breached its duty of care, and therefore, the trial court erred in finding that the directed verdict was proper on that ground. While a jury could conclude from the evidence that Wal-Mart employees merely requested Jones to delay Beckham or obtain the license plate tag number of Hancock's vehicle in a manner that did not violate Wal-Mart's policies, there is also evidence that Wal-Mart employees violated Wal-Mart's policies by instructing Jones to engage in the pursuit that occurred. Specifically, there is evidence indicating that Wal-Mart employees directed Jones to obtain Hancock's license plate tag number *while* observing Jones following Hancock's vehicle in the parking lot and even after Jones stated that Hancock's vehicle was leaving the parking lot. Accordingly, there is evidence from which a jury could find that Wal-Mart employees either instructed Jones to act in violation of Wal-Mart's policies, or acquiesced in Jones's improper pursuit of Hancock and Beckham.

## II.    *Proximate Cause*

To show proximate cause, a plaintiff must show both causation in fact and legal cause. *Madison*, 371 S.C. at 146, 638 S.E.2d at 662 (citing *Oliver v. S.C. Dep't of Highways & Pub. Transp.*, 309 S.C. 313, 316, 422 S.E.2d 128, 130 (1992)). A plaintiff proves causation in fact by establishing that the injury would not have occurred "but for" the defendant's negligence, and legal cause by establishing foreseeability. *Id.* (citing *Oliver*, 309 S.C. at 316, 422 S.E.2d at 130). "Foreseeability is determined by looking at the natural and probable consequences of the complained of act, although it is not necessary to prove that a particular event or injury was foreseeable." *Id.* (citations omitted). The defendant's negligence does not have to be the sole proximate cause of the plaintiff's injury; instead, the plaintiff must prove the defendant's negligence was at least one of the proximate causes of the injury. *Id.*

An intervening force may be a superseding cause that relieves an actor from liability, but for there to be relief from liability, the intervening cause must be one that could not have been reasonably foreseen or anticipated. *Rife v. Hitachi Const.*

*Mach. Co.*, 363 S.C. 209, 217, 609 S.E.2d 565, 569 (Ct. App. 2005). In other words, the intervening negligence of a third party will not excuse the first wrongdoer if such intervention ought to have been foreseen in the exercise of due care. *Bishop v. S.C. Dep't of Mental Health*, 331 S.C. 79, 89, 502 S.E.2d 78, 83 (1998). "In such case, the original negligence still remains active, and a contributing cause of the injury." *Id.* Accordingly, if the intervening acts are set into motion by the original wrongful act and are the foreseeable result of the original act, the "final result, as well as every intermediate cause, is considered in law to be the proximate result of the first wrongful cause." *Wallace v. Owens-Ill., Inc.*, 300 S.C. 518, 521, 389 S.E.2d 155, 157 (Ct. App. 1989).

As an initial matter, there is evidence that "but for" Wal-Mart employees instructing Jones to obtain Hancock's license plate tag number, the accident would not have occurred. Moreover, viewing the evidence in the light most favorable to Petitioner, the trial court erred in finding the directed verdict was proper as to foreseeability, because there is more than one reasonable inference as to whether the consequences of the Wal-Mart employees' actions were foreseeable. It is a natural and probable consequence that a contracted security guard would follow instructions from Wal-Mart employees telling him to "do what you got to do," including pursuing a suspect off-premises. Furthermore, Wal-Mart's own policies demonstrate that Wal-Mart recognized the danger of pursuing a shoplifting suspect, and it was reasonably foreseeable that instructing a contracted security guard to engage in such pursuit would be dangerous.

We find that there is sufficient testimony indicating that upon the Wal-Mart employees' instruction to obtain Hancock's license plate tag number, Jones's actions were *not* independent unforeseeable intervening acts. There was evidence presented that: Wal-Mart employees' instructions led Jones to drive through Wal-Mart's parking lot in pursuit of Beckham; Wal-Mart-employees directed Jones to obtain Hancock's license plate tag number while observing Jones pursue Beckham and Hancock in his patrol vehicle, with both vehicles being operated recklessly; and Wal-Mart continued to instruct Jones to obtain the tag number even after Jones informed them that Hancock's vehicle was leaving the parking lot.

Accordingly, there is evidence that Jones's acts—which were the foreseeable results of Wal-Mart employees' actions—were set into motion by the original wrongful acts of Wal-Mart. We therefore reverse the court of appeals' decision to uphold trial court's grant of a directed verdict on the issue of proximate cause.

### III. *Apportionment of Fault*

Unlike Chief Judge Few, we do not view Wal-Mart's liability as strictly derivative of Jones's or USSA's liability. In addition to Petitioner's claim that Jones was Wal-Mart's agent and thus, Wal-Mart is vicariously liable for his conduct, Petitioner also alleged that Wal-Mart was liable based on its failure to properly supervise Jones and Wal-Mart's improper advice or instruction to Jones to follow Hancock to obtain her license plate tag number. Considering Wal-Mart's potential liability, it is conceivable that a jury could find that the collective fault of the defendants was over fifty percent and that Hancock was less than fifty percent at fault.[4] In light of the reversal of the directed verdict as to Wal-Mart's liability, the only appropriate remedy in this situation is a new trial.

### CONCLUSION

Based on the foregoing, we reverse the court of appeals' decision and remand for a new trial as to all defendants.

**REVERSED AND REMANDED.**

**BEATTY and HEARN, JJ., concur. PLEICONES, C.J., dissenting in a separate opinion in which KITTREDGE, J., concurs.**

---

[4] The dissent, by adopting Chief Judge Few's rationale, merely assumes the outcome of the jury's deliberations when it is impossible to know what would influence the jury's comparison if the jury was permitted to consider Wal-Mart's liability. Here, we cannot say that the sole reasonable inference to be drawn from the evidence was that Hancock was more than fifty percent negligent in light of the testimony that Wal-Mart employees instructed Jones to follow Hancock. *Bloom*, 339 S.C. at 422, 529 S.E.2d at 713 ("In a comparative negligence case, the trial court should only determine judgment as a matter of law if the *sole* reasonable inference which may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent." (citation omitted) (emphasis added)). Therefore, it would be inappropriate for this Court to speculate. *See Thomasko*, 349 S.C. at 11, 561 S.E.2d at 599 ("Because the term is relative and dependant on the facts of a particular case, comparing the negligence of two parties is ordinarily a question of fact for the jury. For these reasons, this Court is reticent to endorse directed verdicts in cases involving comparative negligence." (internal citations omitted)).

**CHIEF JUSTICE PLEICONES:**  I respectfully dissent and would affirm the decision of the Court of Appeals.  I agree with Chief Judge Few:

> Even under [Petitioner's] theory of the case, Wal-Mart's conduct merely provides some explanation of what motivated Jones' actions.  Wal-Mart's negligence could affect how much of the remaining 35% of fault is attributable to Jones, for if Jones was motivated by Wal-Mart's improper actions, arguably he would bear less of the fault for Hancock's death.  However, Wal-Mart's actions can have no effect on Hancock's fault.  Wal-Mart obviously did not advise or instruct Hancock to flee, nor did it enable her actions by failing to adequately supervise her.  There is no evidence in the record that Hancock knew anything about what Wal-Mart told Jones.  Therefore, Wal-Mart's alleged conduct could not have reduced Hancock's proportion of fault in the way it could have reduced that of Jones.  Even if the jury had been permitted to consider Wal-Mart in its apportionment of fault, Wal-Mart's conduct could not have affected the jury's determination that Hancock was 65% at fault.
>
> Because Wal-Mart's conduct could not have reduced Hancock's fault, [Petitioner] is bound by the jury's finding that she was 65% at fault, and the trial court's decision to grant Wal-Mart a directed verdict could not have prejudiced [Petitioner].  Therefore, I believe we must affirm.  *See O'Neal v. Carolina Farm Supply of Johnston, Inc.*, 279 S.C. 490, 497, 309 S.E.2d 776, 780 (Ct.App. 1983) (affirming directed verdict without deciding whether trial court erred because jury's verdict made error harmless).

*Roddey v. Wal-Mart Stores E., LP*, 400 S.C. 59, 68, 732 S.E.2d 635, 639-40 (Ct. App. 2012).

Moreover, I am not convinced that even if Petitioner were entitled to a new trial against Wal-Mart, it would be proper to require USSA and Jones to face the possibility of liability in a second trial having been absolved in the first.  In arguing for a joint retrial, Petitioner relies on *Williams v. Slade*, 431 F.2d 605 (5th Cir. 1970).  In *Williams*, the "innocent" passenger sued both the driver of the automobile in which she was riding and the driver of the other car involved in the accident.  The trial court directed a verdict in favor of one of the drivers, and the

jury returned a verdict in favor of the other.  In *Williams*, either of the defendants, or both, might have been liable to the plaintiff.  Here, however, Wal-Mart could not be liable unless USSA and Jones were also responsible, and unlike the *Williams'* innocent plaintiff, a jury could (and did) find Hancock to be most at fault.  I am unable to determine why the majority concludes, without discussion, that both USSA and Jones should again face a jury trial and the possibility of liability.

**KITTREDGE, J., concurs.**