**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Tipperary Sales d/b/a La-Z-Boy Furniture Gallery,
Appellant,

v.

South Carolina Department of Transportation; South
Carolina Department of Health and Environmental
Control; City of North Charleston; Charleston Water
System; Associated Developers, Inc., Parkhill, LLC,
Defendants,

Of Which South Carolina Department of Transportation;
South Carolina Department of Health and Environmental
Control; City of North Charleston; and Charleston Water
System are the Respondents.

Appellate Case No. 2014-000582

———————

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2016-UP-351
Heard May 2, 2016 – Filed June 30, 2016

———————

**AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED**

———————

Michael S. Seekings and Yancey Alford McLeod, III, both of Leath Bouch & Seekings, LLP, of Charleston for Appellant.

M. Dawes Cooke, Jr., and Phillip S. Ferderigos, both of Barnwell Whaley Patterson & Helms, LLC, of Charleston; Andrew Steven Halio, of Halio & Halio, PA, of Charleston; Roy Pearce Maybank and Amanda R. Maybank, both of Maybank Law Firm, LLC, of Charleston; Gordon Wade Cooper, of Buyck, Sanders & Simmons, LLC, of Mt. Pleasant; Deborah Harrison Sheffield, of Columbia; for Respondents.

---

**PER CURIAM:**  Appellant Tipperary Sales d/b/a La-Z-Boy Furniture Gallery (Tipperary) sued the South Carolina Department of Health and Environmental Control (DHEC), the South Carolina Department of Transportation (DOT), the City of North Charleston (the City), and the Charleston Water System (CWS) (collectively Respondents) on various causes of action after a heavy rain resulted in flooding to its store.  In separate orders, the circuit court (1) granted summary judgment on Tipperary's claims against DHEC and DOT[1] and (2) dismissed Tipperary's claims against the City and CWS on the pleadings.  Tipperary appeals. We affirm in part, reverse in part, and remand.

---

[1] In the order granting summary judgment to DOT, the circuit court held (1) Tipperary's claims for damages arising out of any flooding events before April 8, 2008, were time-barred pursuant to section 15-78-110 of the South Carolina Code (2005); and (2) Tipperary failed to allege facts sufficient to state claims for relief in its causes of action against DOT for negligence, inverse condemnation, and trespass.  Although Tipperary appeals only the holdings concerning the sufficiency of its allegations against DOT, we will treat this order as one granting summary judgment pursuant to DOT's motion.  *See* Rule 56(b), SCRCP ("A party against whom a claim, counterclaim, or cross-claim is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in his favor . . . .").

In 2000, Tipperary began leasing retail space at a shopping center in North Charleston for its furniture store. Tipperary, at its own expense, installed fixtures and various interior upgrades to upfit the property for its business purposes.

In 2003, during construction undertaken by DOT to improve the interchange at I-26, Ashley Phosphate Road, and the Highway 52 Connector in North Charleston, a heavy rainfall resulted in considerable flooding downstream, adversely affecting Tipperary's store. In July 2005, while the project was still in progress, another flood occurred, adversely affecting Tipperary's store. After a third storm in 2008, which resulted in loss of revenue and damage to Tipperary's store premises, inventory, and displays, Tipperary sought this action against Respondents and others, alleging, *inter alia,* causes of action for negligence and gross negligence, trespass, and inverse condemnation. After all Respondents filed individual responsive pleadings, DHEC and DOT each moved for summary judgment, and the City and CWS each moved for judgment on the pleadings pursuant to Rule 12(c), SCRCP. Following a hearing on Respondents' motions, the circuit court issued orders granting summary judgment to DHEC and DOT and dismissing the claims against the City and CWS.

1.      Tipperary argues it should have been allowed to proceed on its negligence claims against DHEC because ample evidence was presented to support a jury finding that DHEC was grossly negligent in issuing permits. We disagree.

Contrary to Tipperary's assertion that DHEC permitted numerous developments while intentionally ignoring the historical and ongoing flooding concerns, a DHEC engineer testified that DHEC was unaware of the flooding problem around Tipperary's store when it approved the permits at issue in this case. The engineer further explained in his deposition that the storm water permit applications included, as required by the applicable regulations, a drainage analysis from a consulting engineer hired by the developer. Tipperary did not provide evidence that DHEC failed to follow the proper procedure in approving the permits at issue, and the only support Tipperary provided in its brief for its position that DHEC was aware of the flooding problem were references to its amended complaint. We therefore affirm the circuit court's finding that Tipperary's negligence claim failed as a matter of law. *See SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 497, 392 S.E.2d 789, 792 (1990) ("Rule 56(e), SCRCP requires that when a motion for summary judgment is made and supported as provided by the rule, an adverse party may not rest upon the mere allegations or denials of his pleadings."); *Proctor v. Dep't of Health & Envtl. Control*, 368 S.C. 279, 297, 628 S.E.2d 496, 504 (Ct. App. 1996)

(defining gross negligence as "the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do" and noting "[n]egligence is the failure to exercise due care, while gross negligence is the failure to exercise slight care").

2.      Tipperary also argues DHEC's issuance and approval of the development permits constituted an "affirmative, positive, aggressive act" sufficient to withstand a summary judgment motion on its inverse condemnation claim against DHEC. We disagree. *See Hawkins v. City of Greenville*, 358 S.C. 280, 291, 594 S.E.2d 557, 562 (Ct. App. 2004) (finding the allegedly improper approval of neighboring developments and subsequent failure to upgrade affected drainage pipes were "merely failures to act"); *id.* (stating "[a]llegations of mere failure to act are insufficient" to support a claim for inverse condemnation).

3.      Tipperary challenges the grant of summary judgment on its negligence claim against DOT, arguing (1) the circuit court erred in finding the claim required an affirmative, positive, and aggressive act and (2) DOT's conduct in not only failing to correct the flooding problem but exacerbating it as well amounts to gross negligence.

We agree with Tipperary that the circuit court erred in discussing the requirement of an affirmative, positive, and aggressive act in dismissing Tipperary's negligence claim against DOT. *See Roddey v. Wal-Mart Stores E., LP*, 415 S.C. 580, 589, 784 S.E.2d 670, 675 (2016) ("To prove a cause of action for negligence, a plaintiff must show: (1) the defendant owes a duty of care to the plaintiff; (2) the defendant breached that duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages."); *Hawkins*, 358 S.C. at 290, 594 S.E.2d at 562 (recognizing "an affirmative, positive, aggressive act on the part of the governmental agency" is an element of an inverse condemnation claim).

Nevertheless, we hold Tipperary's arguments on appeal concerning DOT's handling of the flooding problem do not present any reversible error on the dismissal of Tipperary's negligence claim. In arguing that DOT's conduct amounted to gross negligence, Tipperary only noted that DOT installed and constructed the twin pipes beneath the parking lot of the shopping mall where its store is located and alleged that DOT "has done nothing" even though it knew for three decades that they were installed improperly. DOT's design and construction of the drainage system servicing Tipperary's property, however, are quasi-judicial,

discretionary functions for which it is not liable under the South Carolina Tort Claims Act. *See* S.C. Code Ann. § 15-78-60(1) (2005) ("The governmental entity is not liable for a loss resulting from . . . legislative, judicial, or quasi-judicial action or inaction[.]"); *Hawkins*, 358 S.C. at 294, 594 S.E.2d at 564 (following the rule that the design and planning of drainage systems "are considered quasi-judicial, discretionary functions for which a government entity is not liable" (citing *City of Tyler v. Likes*, 962 S.W.2d 489, 501 (Tex. 1997))). Although Tipperary argued in its brief that DOT's conduct constituted gross negligence, it supported this position by referencing the allegation in its complaint that although DOT had been on notice about the flooding problems, it had done nothing to correct them and in fact exacerbated them. Tipperary, however, did not direct our attention to any evidence that would support these allegations or its position that DOT was grossly negligent; therefore, we conclude summary judgment to DOT on Tipperary's negligence claim was proper.

4.     As to the dismissal of its trespass claim against DOT, Tipperary argues on appeal that it alleged sufficient affirmative and intentional acts by DOT to constitute an action for trespass, namely, that DOT was aware of the flooding problems and despite this knowledge, proceeded with a road project knowing that it would exacerbate the flooding. However, contrary to Tipperary's argument in its brief that it alleged in its complaint that DOT, "in spite of its knowledge of the existing flood issues, proceeded with a road project knowing that doing so would result in the exacerbation of the flooding," Tipperary alleged only that DOT "conducted no significant analysis of the effect the planned improvement would have on downstream flooding, which [DOT] knew or should have known was a recurring problem" and refused to accept responsibility even after Tipperary, based on information it received after the 2003 flood, determined this event resulted in large part from the DOT construction. Tipperary never alleged in its pleadings that DOT had prior knowledge that the roadwork would be likely to result in water damage to Tipperary's property. Therefore, we decline to disturb the circuit court's conclusion that Tipperary failed to set forth sufficient facts in its complaint to maintain a trespass claim against DOT. *See Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991) ("Trespass is an intentional tort; and while the trespasser, to be liable, need not intend or expect the damaging consequence of his entry, he must intend the act which constitutes the unwarranted entry on another's land."); *Restatement (Second) of Torts* § 158 cmt. i (1965) ("[I]t is not necessary that the foreign matter should be thrown directly and immediately upon the other's land. It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter.").

5.     However, we hold the circuit court erred in dismissing Tipperary's inverse condemnation claim against DOT.  In concluding Tipperary's allegations against DOT amounted to only a mere failure to act, the circuit court referenced Tipperary's allegations about DOT's construction and installation of developments upstream from Tipperary's store as well as DOT's alleged failure to remedy drainage defects caused by the flooding on Tipperary's store premises.  Citing *Hawkins*, the court held that DOT's purported failure to act or to remedy the drainage defects did not constitute the type of affirmative, positive, aggressive acts by a governmental agency that would result in liability for inverse condemnation. The court, however, appeared to ignore Tipperary's allegations that (1) DOT was aware of a study documenting the long history of flooding in the area surrounding Tipperary's store; (2) the flooding problem was caused by an inadequate box culvert and two eighty-four inch drainage pipes that DOT had installed; (3) in September 2002, DOT began a construction project that contributed further to the flooding; and (4) a study commissioned by DOT's resident engineers indicated the project would add 13.7 acres of impermeable surface adjacent to the choke point in DOT's right-of-way, which in turn could result in flooding that would exceed the capacity that the existing drainage system could handle.  We hold DOT's alleged conduct could constitute an affirmative, positive, and aggressive act that would support Tipperary's inverse condemnation claim.  *See WRB Ltd. P'ship v. Cty. of Lexington*, 369 S.C. 30, 33, 630 S.E.2d 479, 481 (2006) (reversing summary judgment in favor of the county because capping a landfill, which resulted in methane gas venting onto the plaintiff's property, was "an affirmative, aggressive, positive act"), *Berry's On Main, Inc. v. City of Columbia*, 277 S.C. 14, 16, 281 S.E.2d 796, 797 (1981) (ruling "the removal of a public sidewalk and support in the course of an urban redevelopment project constitutes the affirmative, positive, aggressive act our cases require for a taking"); *Kline v. City of Columbia*, 249 S.C. 532, 537, 155 S.E.2d 597, 599-600 (1967) (finding that improving and widening a public street is an affirmative, aggressive, and positive act).

6.     We agree with Tipperary that the circuit court, in dismissing its negligence claim against the City, incorrectly based this ruling on the absence in Tipperary's complaint of any allegation of an affirmative, positive, and aggressive act.  As we have previously noted, proof of such an act by a governmental entity is necessary to prevail on an inverse condemnation claim but not on a negligence cause of action.  Nevertheless, we hold Tipperary failed to allege sufficient facts in its complaint that, if proved, would support a finding of gross negligence that would expose the City to liability under the South Carolina Tort Claims Act.  Specifically,

Tipperary alleged the City fell short of its responsibility to provide an adequate and appropriate drainage system in the vicinity of its store; however, Tipperary did not allege the City intentionally disregarded its duties or failed to exercise at least slight care in discharging them. *See Jinks v. Richland Cty.*, 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003) ("Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do."); *id.* (stating gross negligence "is the failure to exercise slight care").

7.      We decline to reverse the circuit court's dismissal on the pleadings of Tipperary's trespass claim against the City. In its brief, Tipperary argues only that its amended complaint alleged the City was aware of the flooding problem for three decades and in spite of its knowledge of the existing flooding issues, proceeded with road projects knowing that doing so would result in exacerbating and further contributing to flooding in the vicinity of Tipperary's store. Such allegations do not rise to the level of a trespass. *See Graham v. Town of Latta*, Op. No. 5398 (S.C. Ct. App. filed March 30, 2016) (Shearouse Adv. Sh. No. 13 at 91, 113) (rejecting the appellants' argument that the respondent's construction and operation of a municipal water system was sufficient evidence of trespass and noting there was no evidence the respondent intentionally released sewage on to the appellants' property).

8.      We hold, however, the circuit court erred in dismissing Tipperary's inverse condemnation claim against the City. In its complaint, Tipperary alleged the City constructed nearby streets in such a manner that storm water was directed toward its store. Relying on *Hawkins v. City of Greenville*, the circuit court ruled this alleged conduct amounted only to a failure to act rather than to an affirmative act. Although this court concluded the appellant showed only a mere failure to act, a careful reading of the opinion reveals that this holding was in response to the City's failure to replace the drainage pipes after they were rendered inadequate. *Hawkins*, 358 S.C. at 291, 594 S.E.2d at 563. In the present case, Tipperary alleged the City's construction of nearby streets directly led to the flooding of its store because the City's construction, maintenance, and operation of graded streets and thoroughfares caused storm water to collect directly in front of and behind Tipperary's store. Unlike the situation in *Hawkins*, then, the City's conduct about which Tipperary complains amounted to an affirmative, positive, and aggressive act that could support a claim for inverse condemnation. *See WLB Ltd. P'ship*, 369 S.C. at 33, 630 S.E.2d at 481 (reversing summary judgment in favor of the county because capping a landfill, which resulted in methane gas venting onto the

plaintiff's property, met the requirement for "an affirmative, aggressive, positive act"); *Cutchin v. S.C. Dep't of Highways & Pub. Transp.*, 301 S.C. 35, 39, 389 S.E.2d 646, 648 (1990) (affirming a jury award on a claim of inverse condemnation resulting from the construction of an inadequate culvert that caused the plaintiff's property to flood); *Berry's On Main*, 277 S.C. at 16, 281 S.E.2d at 797 (ruling "the removal of a public sidewalk and support in the course of an urban redevelopment project constitutes the affirmative, positive, aggressive act our cases require for a taking"); *Kline*, 249 S.C. at 537, 155 S.E.2d at 599-600 (holding that improving and widening a public street is an affirmative, aggressive, and positive act).

9.      Tipperary further challenges the circuit court's dismissal on the pleadings of its negligence claim against CWS.  We agree with Tipperary the dismissal was premature.

In dismissing this claim, the circuit court cited *Hawkins* for the proposition that a governmental entity has absolute immunity for design, construction, and maintenance decisions.  *See Hawkins*, 325 S.C. at 294, 594 S.E.2d at 564 ("We find a comparable degree of discretion was granted to the City . . . to exercise the measured policy judgments required to build and maintain an adequate municipal sewer and drainage system in Greenville.").  Based on this language, the circuit court found that pursuant to various enumerated exceptions to the waiver of immunity under the South Carolina Tort Claims Act,[2] CWS could not be liable for any alleged negligence arising from the design and maintenance of the drainage system.  Tipperary's specifications of negligence against CWS, however, concern CWS's alleged failure to lower the water level of the reservoir to prevent upstream flooding during heavy rainfalls despite its ability to do so.  In our view, the alleged acts or omissions on CWS's part are more appropriately classified as operational concerns rather than failures in design, construction, or maintenance.  Therefore, we question whether they involve "legislative, judicial, or quasi-judicial action or inaction." S.C. Code Ann. § 15-78-60(1) (2005); *see also Proctor*, 368 S.C. at 306, 628 S.E.2d at 511 (stating governmental functions that are operational in nature are "not the type of discretionary act contemplated in the Tort Claims Act"); *id.* at 306-07, 628 S.E.2d at 511 ("The fact that the [governmental] employees had to make

---

[2]  The circuit court cited exceptions (1), (2), (4), (5), (7), and (13) of section 15-78-60 of the South Carolina Code (2005).

decisions or exercise some judgment in their activities is not determinative [of whether the action at issue is discretionary or operational]").

To the extent that the allegations of negligence against CWS involved discretionary acts, the circuit court acknowledged in its order that "[t]he burden of establishing a limitation upon liability or an exception to the waiver of immunity under the Tort Claims Act is upon the governmental entity asserting it as an affirmative defense." *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 393, 520 S.E.2d 142, 152 (1999); *Hawkins*, 358 S.C. at 294, 594 S.E.2d at 564 ("The governmental entity bears the burden of establishing discretionary immunity as an affirmative defense." (quoting *Sabb v. S.C. State Univ.*, 350 S.C. 416, 428, 567 S.E.2d 231, 237 (2002))). Unlike *Hawkins*, which involved the grant of summary judgment, Tipperary's claim against CWS was dismissed on the pleadings, and CWS did not present evidence to the circuit court that it used discretion in its decisions regarding the water level of the reservoir or exercised at least slight care. *See Foster v. S.C. Dep't of Highways & Pub. Transp.*, 306 S.C. 519, 525, 413 S.E.2d 31, 35 (1992) ("[M]ere room for discretion on the part of the governmental entity was not sufficient to invoke the discretionary immunity provision. *Proof that the governmental employees faced with alternatives, actually weighed competing considerations and made a conscious choice is necessary.*" (emphasis added)).

The circuit court also found that a number of allegations of negligence made by Tipperary against CWS did not amount to assertions of affirmative, positive, and aggressive acts and were therefore insufficient. As we have previously noted in this opinion, proof of an affirmative, positive, and aggressive act is not necessary to establish negligence or gross negligence.[3]

The circuit court further ruled CWS, pursuant to section 5-31-250 of the South Carolina Code (2004), had no control of any design, construction or maintenance of any drainage system and therefore could not be liable in negligence for any

---

[3] We acknowledge that this court in *Hawkins* stated that "unless the landowner pleads and proves an overt act against the municipality proximately causing the damages complained of, there is no cause of action under [section 5-31-450]." *Hawkins*, 358 S.C. at 295-96, 594 S.E.2d at 565 (quoting *Taleff v. City of Greer*, 284 S.C. 510, 512, 327 S.E.2d 363, 364 (Ct. App. 1985)). The circuit court, however, did not discuss section 5-30-450 in this particular order.

problems arising from these responsibilities.  However, section 5-31-250 authorizes "[t]he board of commissioners of public works of *any* city or town" to "purchase, build or contract for building *any* waterworks . . . ."  (emphasis added).  Under section 5-31-250, entities such as CWS (1) are granted the right to operate such facilities and (2) "shall have full control and management of them."  We therefore disagree with the circuit court's interpretation of section 5-31-250 and hold that this statute does not preclude CWS from being held accountable for the flooding of Tipperary's store premises.  Moreover, we question CWS's position that it could not be liable in negligence because it had no duty to open its spillway during heavy rains to prevent upstream flooding.  *See Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) (recognizing the City of Camden had, pursuant to its contract with a textile company that built a reservoir to aid production at its plant, "complete control of the dam and water level in the event of a weather emergency").

10.    We hold the circuit court properly dismissed Tipperary's inverse condemnation claim against CWS because Tipperary failed to allege CWS committed an affirmative, positive, and aggressive act.  Tipperary alleged in its complaint against CWS that CWS operated the drainage system and maintained the level of its reservoir in such a manner that the drainage system did not properly drain storm water.  We agree with the circuit court that such an allegation amounts to only an assertion of a failure to act, which is insufficient as a matter of law to support an inverse condemnation claim.  *See Hawkins*, 358 S.C. at 291, 594 S.E.2d at 563 (stating "[a]llegations of mere failure to act are insufficient" to support a claim for inverse condemnation).

11.    Finally, we hold the circuit court should not have dismissed Tipperary's trespass claim against CWS on the pleadings.  As Tipperary pointed out in its brief, it alleged CWS "intentionally and knowingly directed storm water runoff to [its] premises."[4]  Tipperary, therefore, asserted CWS not only knew its actions could lead to storm water runoff flooding Tipperary's store but also actively caused water intrusion to that location despite knowledge that its actions could result in serious flooding.  These allegations, if proven, could support a finding that CWS committed a trespass onto Tipperary's property.  *See Snow*, 305 S.C. at 553, 409

[4] Tipperary made similar allegations in its trespass claims against DOT and the City; however, when addressing on appeal the dismissal of its trespass claims against these respondents, Tipperary did not reference these allegations.

S.E.2d at 802 ("To constitute an actionable trespass, . . . there must be an affirmative act, the invasion of the land must be intentional, and the harm caused must be the direct result of that invasion."); *id.* ("Intent is proved by showing that the defendant acted voluntarily and that he knew or should have known the result would follow from his act.").

Based on the foregoing, we reverse the dismissals of the inverse condemnation claims against DOT and the City and dismissals of the negligence and trespass claims against CWS. We affirm the dismissals of Tipperary's other causes of action.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**SHORT and THOMAS, JJ., and CURETON, A.J., concur.**